**UNITED STATES of America,**

v.

**William CUTOLO, et al., Defendants.**

**No. CR 93–1230.**

United States District Court,
E.D. New York.

Nov. 14, 1994.

See also, 861 F.Supp. 1142.

Zachary W. Carter, U.S. Atty., Brooklyn, NY, for the U.S. (Andrew Weissmann and James Orenstein, of counsel).

LaRossa, Mitchell & Ross, New York City, for defendant Cutolo (James LaRossa, Andrew Weinstein, of counsel).

Santangelo, Santangelo & Cohen, New York City, for defendant DeMartino (George Santangelo, Gregory Nespole, of counsel).

Gerald DiChiara, New York City, for defendant Scianna.

Thomas R. Ashley, Newark, for defendant Spataro.

James T. Moriarty, New York City, for defendant Russo.

Bruce Cutler, New York City, for defendant Iannaci.

Goltzer & Adler, New York City, for defendant Campanella (George Goltzer, of counsel).

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Count Three of the indictment in this case charges that the seven defendants conspired to murder members of the Persico faction of the Colombo Organized Crime Family in order to maintain or enhance their positions in that Family.

The court has before it an application by the government to preclude defendants from obtaining discovery of or offering evidence as to whether an F.B.I. agent gave information to Gregory Scarpa, a member of the Persico faction in the "war" with the Orena faction of which defendants were members.

The defendants advance two main arguments as to why evidence should be admitted that an F.B.I. agent gave information to Scarpa.

### I.

The first is that the evidence would be relevant to a defense of entrapment by showing that "Scarpa, a government agent, was sent out by the F.B.I. in order to spread fear among the defendants and to incite them to react."

A defense of entrapment presupposes that the defendants illegally conspired to kill Persico faction members in order to maintain or enhance their positions in the family, but may not be found guilty because they would not have committed the crime without the government's inducement.

Leaving aside the fact that defendants have pointed to no facts from which it

can be inferred that the F.B.I. purposely "incited" defendants to conspire to kill members of the Persico faction, the court concludes that in any event there is no basis for an entrapment defense. Indeed, there is no contention that an F.B.I. agent sought to induce defendants to conspire to maintain or enhance their positions in the Colombo family by murder. Moreover, there is no claim that anyone in the F.B.I. (or Scarpa himself) communicated with defendants and persuaded them to conspire to kill members of the Persico faction.

■ To justify an entrapment charge a defendant must show "that the government's inducement was directly communicated" to the defendant. *United States v. Toner*, 728 F.2d 115, 127 (2d Cir.1984). Even in a case where a government agent induces an intermediary to commit a crime and the intermediary in turn induces a defendant to participate, the defendant may not assert an entrapment defense. *Id.*

Where a defendant commits an illegal act in response to even a well founded belief that another person may take some action with the assistance of the government, such a defendant has not been entrapped by the government into committing the illegal act. The court has found no reported decision that has held to the contrary.

This court holds that there is no basis for a defense of entrapment.

## II.

The defendants' second argument for allowing the discovery requested is that it is relevant to their defense that they did not intentionally conspire to kill members of the Persico faction to maintain or enhance their positions in the family, but merely agreed to get ready to defend themselves if they were attacked by that faction.

This argument assumes that the defendants will offer evidence permitting the jury to find that the defendants agreed to shoot at the Persico faction only to defend themselves against attack and then only when they could do so legally, that is, only when they could not avoid using deadly force by retreating or

seeking the assistance of law enforcement officials.

■ Defendants say that evidence that Scarpa, who, they assert was for many years a mad, blood thirsty killer with an animus against the Orena faction, was receiving information from an F.B.I. agent is relevant to defendants' intent. The contention is that knowledge of Scarpa's receipt of such information would strengthen defendants' intent to agree to prepare to defend themselves against Scarpa.

The jury could infer from defendants' alleged knowledge of Scarpa's propensities as a "lethal" and unrestrained killer that defendants had a motive and intent to agree to defend themselves. But even if they had suspected that Scarpa was receiving information from an F.B.I. agent, that would hardly have added significantly to their putative determination, aroused by their knowledge of Scarpa's blood thirsty character, to defend themselves.

Under Rule 403 of the Federal Rules of Evidence the court rules out evidence that an F.B.I. agent gave information to Scarpa, because to admit it would require a diversionary trial of issues of no critical or substantial probative value in the case.

## III.

■ Defendants also urge that the requested information is relevant to impeaching the credibility of Scarpa whose out-of-court declarations are in evidence. It is hard to see how such information would add anything to the amount of evidence already adduced pertinent to the credibility of Scarpa. In any event, the statements by Scarpa in evidence appear almost entirely to have been offered for purposes other than their truthfulness.

## IV.

The court is not aware of anything that would make it appropriate at the present time to hold hearings as to whether to dismiss the indictment because of so-called "outrageous conduct" by the government. The court may visit that issue later if it becomes necessary.

The government's application is granted. So ordered.